UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| AMY KUKEC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 16 cv 9805 |
| v. | ) ) ) | Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amy Kukec ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Title II and Title XVI of the Social Security Act. For the reasons discussed more fully below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Motion for Summary Judgment [dkt. 13] is granted as stated herein. The Commissioner's Motion for Summary Judgment [dkt. 17] is denied.

**I.  Background**

    **a.  Procedural History**

Plaintiff filed a Title II application for disability and disability insurance benefits on November 25, 2014. [Administrative Record ("R") 19.] Plaintiff also filed also filed a Title XVI application for supplemental security income on December 8, 2014. *Id.* Both applications alleged an alleged onset date of disability as of October 1, 2011. *Id.* Plaintiff's claims were denied initially on May 5, 2015, and again at the reconsideration stage on October 1, 2015. *Id.* Plaintiff timely requested an administrative hearing, which was held on May 9, 2016 before Administrative Law Judge ("ALJ") Kimberly

---

[1]  Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

S. Cromer. [R 19; 37.] Plaintiff was represented by counsel[2], and both a Medical Expert and a Vocational Expert testified during the hearing. [R 37-78.] On May 26, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 19-29.] On August 19, 2016, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. [R 1.] Plaintiff filed the instant action on October 18, 2016. [dkt 1.]

b. **Plaintiff's Background**

Plaintiff was born June 18, 1973, and was 38 years old on her alleged disability onset date. [R 28.] Plaintiff suffers from both mental and physical limitations. Plaintiff's medical records reveal diagnoses of major depressive disorder and post-traumatic stress disorder from at least 2012 through the present. [R 21, 1431, 1667.] Plaintiff's significant mental history includes, *inter alia*, a suicide attempt at age 16 (approximately 1989) [R 1263]; a physically and mentally abusive relationship with her ex-husband [R 663, 1247, 1261, etc.]; two-plus-day hospitalization for suicidal ideation in 2013 [R 549]; three-week inpatient psychiatric hospitalization for suicidal ideation in 2014 [R 24, 1428]; and hospital presentation in 2016 for self-mutilation [R 1840, 1844]. Plaintiff has seen several mental health treaters. Of note is Dr. Hang Wang's finding that Plaintiff has had four or more repeated episodes of decompensation and Licensed Professional Counselor Theresa Bradley's finding that Plaintiff has had one or two repeated episodes of decompensation [R 1413, 1426].[3] Plaintiff's significant physical history includes chronic pain from a fractured coxxyx caused by a domestic violence incident with her ex-husband [R 813, 777; 958]; osteoarthritis in her knees severe enough for Plaintiff to be scheduled

---

[2] Although the ALJ's decision lists Plaintiff's representative, Timothy Osgood as a "non-attorney representative" [R 19], and the Administrative Record reflects that Plaintiff signed a fee agreement with a non-attorney [R 155], Timothy Osgood is listed as "claimant attorney" in the transcript [R 37] and the Illinois Attorney Registration and Disciplinary Commission lists Timothy R. Osgood as an active, licensed attorney. Therefore, the Court presumes Mr. Osgood indeed provided legal counsel to Plaintiff at the Administrative Hearing.

[3] Although Stedman's defines decompensation as "[t]he appearance or exacerbation of a mental disorder due to failure of defense mechanisms," "[d]ecompensation is 'not a self-defining phrase' that has a single, specific meaning" and "the ALJ has the discretion to decide what episodes in the record actually constitute decompensation" under the requirements of the listing. Stedman's Medical Dictionary 366; *Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010); *Moles v. Astrue*, 2011 WL 2600658, at *7 (S.D. Ind. June 29, 2011) (citing *Bullard v. Astrue*, 2010 WL 779454, *9 (S.D.Ind. 2010)).

for a total left knee replacement on June 22, 2016, with her right knee to be replaced the following year [R 25]; lumbar strain and sciatica causing chronic back pain [R 573, 603, 959]; and complaints of migraines 4-5x a week, with one ambulance visit to the hospital for the same [R 1826, 1903].

    c.    **The ALJ's Decision**

On May 26, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 19-29.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of October 1, 2011. [R 21.] At step two, the ALJ found that Plaintiff had the severe impairments of recurrent major depressive disorder without psychotic features; anxiety; post-traumatic stress disorder; mild obesity; history of a coccyx fracture; bilateral osteoarthritis of the knees; chronic headaches; degenerative disc disease of the lumbar spine; and sleep apnea. [*Id.*] The ALJ found Plaintiff's history of excessive, irregular vaginal bleeding to be a nonsevere impairment. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 22-23.] The ALJ made this step three determination after considering the listing requirements for Listing 1.02 for major dysfunction of a joint; Listing 1. 04 for disorders of the spine; Listing 3. 03 for asthma; Listing 3 .10 for sleep related breathing disorders; Listing 11.03 for nonconvulsive epilepsy; and Listing 11.14 for peripheral neuropathy. [*Id.*] The ALJ also considered the "Paragraph B" and "Paragraph C" criteria in making her step three decision, finding in key part with respect to Plaintiff's mental impairments that the Plaintiff "experienced no episodes of decompensation…." [R 23.]

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work, with the exceptions that she can lift and carry 20 pounds occasionally; lift and carry 10 pounds frequently; stand or walk for 4 hours in an 8 hour workday; and sit for 4 hours in an

---

[4]    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

8-hour workday. [R 23-24.] As part of her RFC, the ALJ found that Plaintiff was allowed a sit-stand option at will; she cannot climb ladders, ropes, or scaffolds; she cannot work at unprotected heights, or with hazardous machinery; she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; she should avoid concentrated exposure to extreme temperatures and respiratory irritants; she should avoid even moderate ambulation on slippery, obstructive, or uneven terrain; she should avoid all exposure to vibration; she cannot perform commercial driving; she may use a cane; and she can lift and carry with contralateral upper extremity. [R 24.] The ALJ further limited Plaintiff's RFC in that she can perform simple routine work with no routine contact with the general and occasional interaction with co-workers and supervisors; and Plaintiff cannot perform paced work, as any job must allow for a variable rate with end of day production goals. [*Id.*]

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work, which was all sedentary work performed at a sedentary exertional level. [R 28.] Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform. [R 28-29.] Specifically, the ALJ relied upon testimony from the vocational expert in concluding that Plaintiff could perform "unskilled light work with SVP 2 minus 5% of sedentary jobs"[5] as follows: weight tester; assembly optical; and ampular sealer. [*Id.*] Because of this determination, the ALJ found Plaintiff not disabled under the Act. [R 29.]

    c.    **Issues Before the Court**

On August 19, 2016, the Appeals Council denied Plaintiff's request for review [R 1-6], making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review, alleging that: 1) the ALJ made two internally inconsistent findings (essentially, that a sit/stand at-will option is inconsistent with a daily sit/stand limitation); 2) the ALJ failed to build a logical bridge with respect to

---

[5] To determine the skill level of an individual's past jobs, the Social Security Administration ("SSA") uses the Specific Vocational Preparation ("SVP") rating system. SVP ratings indicate how long it takes a worker to learn how to do his or her job at an average performance level. *See Dictionary Of Occupational Titles*, Appendix C: Components of the Definition Trailer, II (SVP) (4th Ed., Rev. 1991).

any off-task time Plaintiff might need when switching between sitting and standing; 3) the ALJ failed to resolve a conflict between the sitting requirements of sedentary work and Plaintiff's particular sit/stand limitations; 4) the ALJ failed to properly weigh treating source opinions; 5) the ALJ failed to properly weigh Plaintiff's subjective pain allegations; and 6) the ALJ's RFC assessment failed to properly consider Plaintiff's limits in handling detailed instructions.

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether

the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III. Discussion**

   **a.    The ALJ Failed to Build a Logical Bridge with Respect to Off-Task Time**

Plaintiff argues that the ALJ failed to build a logical bridge with respect to the off-task time Plaintiff would require when switching between sitting and standing positions at work. The Commissioner disagrees, arguing that no such bridge was needed because the ALJ included no off-task finding in her decision.

While it is true the ALJ included no off-task finding in her decision, in this case the ALJ pointedly solicited from the VE his opinions concerning Plaintiff's off-task time, meaning the ALJ *did* specifically consider this issue. *Williams v. Colvin*, 2016 WL 836964, at *4 (E.D. La. Feb. 17, 2016), report and recommendation adopted, 2016 WL 828197 (E.D. La. Mar. 3, 2016) (finding that ALJ did consider off-task time specifically because the VE was asked to consider off-task time in rendering opinions). In relevant part, this portion of the transcript exchange between the ALJ and the VE reads

as follows:

> Q: Okay. For hypothetical number two, if we build off of hypothetical number one, but now I'd like to specifically address that that at will position[6] would [sic] the individual off task, so if they alternate between off task, taking them off task, alternating between sitting and standing. And let's say that it's at a level of even 20 percent, would that eliminate all work?
>
> A: I think it would. I don't think she can work when she's off task 20 percent of the time or more.

[R 73.] However, the ALJ then failed to come to any conclusion regarding the off-task time she asked the VE to consider.

Additionally, as Plaintiff pointed out, the assumption she would require off-task time may have been invented by the ALJ without grounding in any medical source. The ALJ did not explain what evidence necessitated such a question to the VE where there was no indication of the same. Nonetheless, it appears the ALJ had reason to believe Plaintiff might be off task at least 20% of the time, or there would be no reason to have posed this hypothetical to the VE.

This is not a harmless error, particularly because the VE testified that Plaintiff would be unemployable under a hypothetical where she would be off-task at least 20% of the time [R 73.][7] The ALJ considered the issue of off-task time, but then failed to provide any analysis of whether, for example, Plaintiff was limited by any off-task allowances and, if, so, for how long. *See, e.g., Washington v. Colvin*, 2013 WL 1903247, at *11 (N.D. Ill. May 7, 2013) (reversing for failure to provide logical bridge as to percentage of time Plaintiff would be off-task). This is error, as there is no logical bridge to

---

[6] This refers to the option to sit or stand at will, allowing the employee to change positions as needed. "Changing positions 'as needed' allows an employee broad flexibility and thus has a more restrictive effect on the jobs available to him…" *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008). The Court does not agree that the Seventh Circuit's *Ketelboeter* decision specifically approved any RFC assessments that provided cumulative standing/walking and sitting numbers along with sit/stand options, as the Commissioner argues in response to the issue of whether an at-will sit/stand option is inconsistent limited hours of sitting/standing. The Court has not reached an opinion on that issue in this Memorandum Order and Opinion, but does note that the adoption of an at-will or as needed sit/stand option is more favorable to a Plaintiff in an SSA case as it necessarily narrows the jobs available, as pointed out by *Ketelboeter*.

[7] As to off-task time, the DOT does not specifically address this limitation (*see, e.g., Arellano v. Colvin*, 2016 WL 3031770, at *6 (C.D. Cal. May 25, 2016)). While the VE in this case suggests 15-20% off task time would be the threshold [R 73], much other case law, including from our own district suggests that even 10% off-task time would eliminate all job prospects. *See, e.g., Keys v. Barnhart*, 430 F. Supp. 2d 759, 770 (N.D. Ill. 2006).

follow to any conclusion (*see Steele v. Barnhart*, 290 F.3d at 941); the Court has endeavored to follow the ALJ's analysis, but the entire off-task bridge and conclusion have disappeared after the ALJ's hypothetical to the VE. This is not an insignificant issue for the ALJ to have raised and then discarded, and we reverse and remand on this basis.

   b.   **The VE's Job Availability Data is Suspect**

Also of particular concern to the Court in this matter is the VE's job availability numbers, despite the fact this issue was not raised by the Plaintiff in her briefs.

In general, the role of a vocational expert is to provide information regarding the kinds of work and the number of jobs in the national economy a hypothetical person with certain limitations can perform. *Pagos v. Colvin*, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015); *Pelfrey v. Com'r of Soc. Sec.*, 2010 WL 909134, at *4 (S.D. Ohio Mar. 10, 2010); *see also*, *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982) (role of a VE is to "translate[ ] factual scenarios into realistic job market probabilities"). Although a VE is entitled to rely on various methods and sources of data, the foundation for the VE's opinions must be adequate and VE's testimony must be reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). "Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Id.*

We borrow language from another Seventh Circuit case (also deciding to reverse and remand) in analogy to the VE's numbers in this case: "[w]e do not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted." *Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014). Here the VE propounds a 5% figure for the jobs he believes would be sedentary but allow for a variable rate of production (essentially, he eliminates 95% of the sedentary positions) under the ALJ's first hypothetical. [R 73.] There is no support in the record for this figure, and it appears to this Court to be conjured out of whole cloth after nearly every job had already been eliminated by the ALJ's

8

hypotheticals. [*See* R 70-73.] It is impossible to intuit the VE's foundation for this testimony, let alone assess the adequacy of the same.

We do not remand on this basis, but these figures are suspect enough to give the Court pause in its analysis, particularly since the ALJ herself appears not to understand this 5% figure. The ALJ found that Plaintiff would be able to perform "unskilled light work with SVP 2 minus 5% of sedentary jobs." [R 29.] This statement appears to be in direct opposition to the ALJ's testimony that "I think probably five percent of [sedentary jobs] would qualify" as those Plaintiff might be able to perform. [R 70-71.] Instead of subtracting 95% of the available jobs as suggested by the VE's testimony, the ALJ determined that Plaintiff should be able to perform 95% of the available jobs.

The Parties may find it prudent on remand to inquire as to the VE's data and reasoning underlying the expert's opinions, particularly because such a wealth of jobs appear to be eliminated based on Plaintiff's limitations. *See McKinnie*, 368 F.3d at 911; *Donahue,* 279 F.3d at 446; and *Denham v. Barnhart*, 2006 WL 4097284 at *3 (all standing for the proposition that a VE's backup data and documentation be "available on demand" when the foundation of the VE's opinions is challenged).

## IV. Conclusion

The Court must reverse and remand this decision because the ALJ failed to build an accurate and logical bridge between the evidence and her conclusions as required by law. We reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error as raised by the Plaintiff in Docket No. 13.

Plaintiff's Motion for Summary Judgment [dkt. 13] is granted. The Commissioner's Motion for Summary Judgment [dkt. 17] is denied.

Entered: 11/9/2017

_____
U.S. Magistrate Judge, Susan E. Cox